## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JAMES JONES, | : | Civ. Action No. 10-3226 (NLH) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| COMMISSIONER OF SOCIAL | : | |
| SECURITY, | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES**

Philip Wolf, Esq.
Wolf and Brown L.L.C.
228 Kings Highway East
Haddonfield, NJ 08033
*Attorney for Plaintiff*

Andreea Lechleitner
Special Assistant U.S. Attorney
Social Security Administration
Office of the Federal Counsel
26 Federal Plaza, Room 3904
New York, NY 10278
*Attorney for Defendant*

**HILLMAN, District Judge**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. §405(g), to review the final decision of the Commissioner of the Social Security Administration, denying the application of plaintiff for Disability Insurance Benefits and Supplemental Security Income ("Social Security benefits") under Title II and Title XVI of the Social Security Act. 42 U.S.C. §401, et seq.

The issues before the Court are whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that plaintiff was not disabled as defined in the Social Security Act, at any time from December 30, 1997, the alleged onset date, through September 30, 2000, the date last insured, and whether the ALJ erred in determining that plaintiff could perform his past relevant work as a quality control inspector, as a sedentary position, with the exception that he could not perform work that required binocular vision or depth perception.

For the reasons stated below, the Court will reverse the decision of the ALJ and remand the matter for further proceedings.

## I.   **Background**

Plaintiff claims that between December 30, 1997 and September 30, 2000, he was under a disability and that the disability was at such a level of severity that it precluded him from engaging in gainful activity or employment.  Plaintiff asserts his impairments as of the date last insured included but were not limited to: right eye blindness, post-traumatic stress syndrome, bi-lateral knee impairment, and cervical disc disease. Plaintiff filed an application for disability insurance benefits on February 15, 2006.  The application was denied on June 13, 2006.  Thereafter, plaintiff filed a request for reconsideration,

which was denied on April 4, 2007.  A request for hearing was filed on May 7, 2007, and a hearing was held on July 24, 2008. The ALJ issued a written decision on September 12, 2008.  The ALJ denied the plaintiff's claim at step four of the sequential evaluation process finding that plaintiff could perform his past relevant work as he previously had performed it.  Plaintiff then filed a request for appeals council review which was denied by the appeals council on April 22, 2010.  Thereafter, plaintiff filed this action.

## II.  Discussion

### A.  Standard of Review

Under 42 U.S.C. §405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for disability insurance benefits.  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are support by "substantial evidence."  42 U.S.C. §§405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support

a conclusion." Id.  The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984). "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000).  Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him.  Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the

4

Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978). Although an ALJ, as the fact finder, must consider and evaluate the medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record." Hur v. Barnhart, 94 Fed. Appx. 130, 133 (3d Cir. 2004). In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182. Moreover, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards. Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 445 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

### B.  Standard for Disability Insurance Benefits

The Social Security Act defines "disability for purposes of an entitlement to a period of disability and disability

insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical and/or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 42 U.S.C. §1382c(a)(3)(A). Under this definition, a Plaintiff qualifies as disabled only if his physical or mental impairments are of such severity that he is not only unable to perform his past relevant work, but cannot, given his age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  42 U.S.C. §1382c(a)(3)(B).

The Commissioner has promulgated regulations for determining disability that require application of a five step sequential analysis.  See 20 C.F.R. §404.1520. This five step process is summarized as follows:

> 1.    If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."
>
> 2.    If the claimant does not suffer from a "severe impairment," he will be found "not disabled."
>
> 3.    If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

6

4.      If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

5.      Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not he is capable of performing other work which exists in the national economy. If he is incapable, he will be found "disabled." If he is capable, he will be found "not disabled."

20 C.F.R. §404.1520(b)-(f).

This five-step process involves a shifting burden of proof. See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983).  In the first four steps of the analysis the burden is on the claimant to prove every element of his claim by a preponderance of the evidence.  See Id.  In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform."  Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

**C.   Analysis**

Plaintiff raises the following arguments: (1) that the ALJ's residual functional capacity ("RFC") finding lacks substantial evidence because he failed to evaluate all of

plaintiff's medical evidence concerning his mental impairment, his bi-lateral knee impairment, and his visual impairment; (2) that the ALJ was incorrect in finding plaintiff's testimony not credible regarding the intensity and limiting effects of his impairments; (3) that the ALJ failed to give proper consideration regarding whether plaintiff met Listing 12.06 pertaining to anxiety type disorders; (4) that the ALJ committed error in finding that plaintiff's cervical disc disease did not constitute a severe impairment; and (5) that the ALJ was incorrect in finding that plaintiff could perform his past relevant work.  We address each argument in the order raised by the plaintiff.

**1.   Residual Functional Capacity**

Plaintiff argues that the ALJ's residual functional capacity ("RFC") finding is not supported by substantial evidence because, although he found them to be severe impairments, he failed to evaluate all of plaintiff's medical evidence concerning his mental impairment, his bi-lateral knee impairment, and his visual impairment.

Although the ALJ did find that plaintiff's mental impairment was severe, plaintiff argues that he did not explain the limitations caused by this severe impairment or why he found no work-related limitations despite medical evidence to the contrary.  Plaintiff states that the medical evidence supports a finding that he suffers from post traumatic stress syndrome

(PTSS) with phobic features as diagnosed by Dr. Richard Rubin. Plaintiff states that Dr. Rubin described his limitations due to PTSS as fear of public scrutiny due to embarrassment resulting from his cosmetic defect, ideas that people are talking about him and staring at him, and reluctance to go into public.

Plaintiff also argues that the ALJ failed to analyze the functional limitations caused by plaintiff's bi-lateral knee impairment.  Plaintiff refers to Dr. Lawrence Barr's report in which he states that plaintiff's knee impairments resulted in permanent injury and plaintiff would have to live with some discomfort.

In addition, plaintiff states that in discussing plaintiff's severe impairment of right eye blindness, the ALJ did not analyze Dr. Rubin's statements that plaintiff was troubled by painful photophobia (light sensitivity) requiring use of sunglasses, even indoors, from glare or overhead lights; that plaintiff had fears of exposure to bright lights, dust, fumes, all which caused irritation to the injured right eye; and that plaintiff suffered from continuous pain.

We reject this part of plaintiff's argument because it is clear to us that the ALJ fully considered the objective medical evidence in determining Plaintiff's RFC.  Indeed, in reaching the first part of his RFC conclusion he cited that

9

evidence in support of his finding that plaintiff's subjective
complaints could be explained by the described impairments.

More specifically, the ALJ noted that on December 21,
1990, plaintiff severely injured his right eye while working and
underwent emergency surgery for a ruptured globe and dislocated
lens in his right eye.  Plaintiff was diagnosed with traumatic
injuries to his right eye resulting in legal blindness (20/200
vision).  Plaintiff's vision in his left eye is 20/20.  The ALJ
recited plaintiff's subsequent eye surgeries in April 1991
(corneal lens implant), May 1991 ("scleral buckling procedure"
and "pars plana vitrectomy"), March 2003 (surgical evisceration
of his right eye with implantation of a prosthesis), January 2004
(right eye orbitotomy, lysis of scar tissue and placement of
hydroxyapatite granules), and September 2005 (external levator
resection right upper eyelid).

The ALJ reviewed the three reports dated May 1991,
September 1994, and October 2004 from Dr. Rubin, plaintiff's
neuropsychiatrist.  The ALJ provided detailed findings from these
reports including Dr. Rubin's impressions that plaintiff was in
some distress and concerned about injuring his left eye.  Dr.
Rubin stated that plaintiff was depressed, nervous, suffered from
PTSS with phobic features, and was embarrassed by his facial
defect.  Dr. Rubin noted that plaintiff lacked depth perception

10

and peripheral vision and had difficulty judging distances.  Dr. Rubin opined that plaintiff suffered from anxiety and depression.

The ALJ referenced Dr. Perry Barr's report in which plaintiff complained of headaches, right eye pain, difficulty sleeping and nervousness.  Dr. Barr noted drooping of plaintiff's right eyelid with discoloration and deformity of the right eye.

The ALJ described injuries sustained by plaintiff following a car accident on November 22, 1997.  The ALJ cited to a report by Dr. Scott Busch, an otolaryngologist, who treated plaintiff for right sided tinnitus after hitting his head in the auto accident, but who found plaintiff's hearing normal and found he had excellent speech discrimination.  The ALJ also cited to a report by Dr. Lawrence Barr, an orthopedist, who treated plaintiff for shoulder pain and found range of motion of plaintiff's cervical spine was 70-75% of normal, marked myospasm in both trapezii and over the anterior shoulder girdles, and tenderness and spasm in the thoracic region.  He diagnosed plaintiff with posttraumatic cervical sprain and strain with bilateral trapezial myofascitis and upper radicular sysmptoms, as well as posttraumatic thoracic sprain and strain, and told plaintiff to avoid strenuous activties.  An MRI of plaintiff's cervical spine showed anterior disc bulging at C5-6, and circumferential disc bulging at C6-7.

The ALJ noted that plaintiff treated with Dr. Barr again in February 1988 for neck pain, intermittent discomfort radiating into his right arm, and swelling, clicking, popping and pain in his knees. Plaintiff was diagnosed with probable medial meniscal tear in his left knee and underwent knee arthroscopic surgery in April 1998. The ALJ described plaintiff's return visit to Dr. Barr in July 1998 who noted that plaintiff's knee was doing well with some stiffness and clicking, but that he had chronic traumatic cervical sprain and strain with a bulging disc at C6-7 and an anterior disc at C5-6 with bilateral trapezial myofascitis. The ALJ also described other follow up visits to Dr. Barr regarding plaintiff's right knee pain which eventually lead to right knee arthroscopic surgery in November 2000 to repair a medial meniscal tear.

Thus, the ALJ reviewed and comprehensively considered plaintiff's medical records regarding his mental impairment, his bi-lateral knee impairment, and his visual impairment. The ALJ noted that Dr. Rubin stated that plaintiff suffered from PTSS with phobic features. Although the ALJ does not specifically acknowledge that Dr. Rubin described plaintiff's limitations due to PTSS as fear of public scrutiny due to embarrassment resulting from his cosmetic defect, ideas that people are talking about him and staring at him, and reluctance to go into public, the ALJ did note that Dr. Rubin opined that plaintiff was in some distress,

nervous, embarrassed by his facial defect, and suffered from anxiety and depression.  The specific limitations that plaintiff raises are merely examples of what the ALJ cited to generally as plaintiff's behavior in feeling distressed, embarrassed, anxious and depressed.

With regard to plaintiff's bi-lateral knee injury, the ALJ described at length plaintiff's surgeries and complaints of knee pain.  Although Dr. Lawrence Barr stated that plaintiff's knee impairments resulted in permanent injury and that plaintiff would have to live with some discomfort, he also felt that plaintiff's knee was doing well.  In addition, the ALJ did note plaintiff's complaints of difficulty bending, lifting and walking.

The ALJ also fully described plaintiff's eye injury, subsequent surgeries, and complaints of pain.  Although the ALJ did not specifically cite to Dr. Rubin's statements that plaintiff was troubled by painful photophobia, and fears of exposure to bright lights, dust, and fumes, he did refer to plaintiff's complaints in more general terms as complaints of pain and anxiety.  In addition, the ALJ noted plaintiff's complaints of eye irritation, particularly by fumes, and problems with equilibrium and inclement weather.

The ALJ does not need to cite to every opinion noted in a medical providers' records.  See Barnhart, 94 Fed. Appx. at 133

("There is no requirement that the ALJ discuss in its opinion
every tidbit of evidence included in the record.").  More
importantly, plaintiff does not show how these limitations, even
if specifically addressed by the ALJ, would result in plaintiff
having a RFC different from the RFC assessed by the ALJ.  The ALJ
found that plaintiff had an RFC to perform sedentary work as
defined in 20 C.F.R. 404.1567(a), with the exception that he
could not perform work that required binocular vision or depth
perception.  Plaintiff does not show how consideration of these
specific limitations would change that assessment.  However, as
stated above, the Court finds that the ALJ did cover many if not
all of these limitations in more general terms.  In sum, we are
convinced that the ALJ adequately reviewed and considered the
medical evidence, at least in evaluating during the RFC analysis
whether the medical evidence would support plaintiff's more
subjective complaints.

   2.   **Credibility**

        We are less convinced that the ALJ, after having
reviewed the underlying medical conditions in some detail,
adequately explained why he rejected plaintiff's subjective
complaints.  Plaintiff argues that the ALJ was incorrect in
finding plaintiff's testimony not credible regarding the
intensity and limiting effects of his impairments.  He argues
that the ALJ failed to consider his complaints of eye pain,

14

headaches, sleeping problems, knee pain and swelling, and photophobia.  We agree.  Because the ALJ did not include specific instances where plaintiff's complaints were inconsistent with other evidence in the record, this Court cannot determine whether the ALJ's finding was supported by substantial evidence.

"Allegations of pain and other subjective symptoms must be supported by objective medical evidence."  Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999), citing 20 C.F.R. § 404.1529. "Once an ALJ concludes that a medical impairment that could reasonably cause the alleged symptoms exists, he or she must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work."  Id.  "This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it."  Id., citing 20 C.F.R. § 404.1529(c).

Here, the ALJ cited plaintiff's testimony that he has difficulty bending, lifting and walking; that his eyes get irritated, particularly by fumes; that he gets depressed; and that he has problems with his equilibrium and inclement weather. The ALJ found that although the plaintiff's impairments could reasonably be expected to produce the alleged symptoms, he also concluded Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not

credible to the extent they were inconsistent with the RFC assessment.

While it is clear the ALJ reached that conclusion we are unable to ascertain why.  Based on the record, the Court cannot determine what part of the RFC assessment showed that plaintiff's complaints were inconsistent with the medical records.  By way of example, in Hartranft, the Third Circuit upheld the ALJ's credibility determination because the ALJ supported his finding with specific instances where Hartranft's complaints about pain and other subjective symptoms were inconsistent with: 1) the objective medical evidence of record; 2) Hartranft's testimony as to his rehabilitation and medication regimen; and 3) Hartranft's own description of his daily activities.

Here, it is unclear what evidence specifically contradicted plaintiff's complaints of difficulty bending, lifting and walking, eye irritation, and depression.  To be clear, we are not ruling that such evidence does not exist.  However, without specific reference to the record by the ALJ, we are unable to conclude the ALJ's credibility determination was supported by substantial evidence.  On remand, the ALJ will be free to, but at the same time must, explain with specific reference to the record why he found Plaintiff not credible.

### 3.   Listing 12.06 (Anxiety Disorder)

Plaintiff further argues that the ALJ failed at step 3
to give proper consideration to whether plaintiff met Listing
12.06 pertaining to anxiety type disorders.  Specifically,
plaintiff argues that the ALJ did not consider Dr. Rubin's
reports which provide substantial evidence that plaintiff meets
this Listing.  Because the ALJ did not specifically describe
plaintiff's daily or social activities, or ability to function
independently, this Court cannot determine whether the ALJ's
finding was correct.

At step three, the ALJ must determine whether
plaintiff's impairment matches, or is equivalent to, one of the
listed impairments.  The ALJ must go beyond reaching a bare
conclusion and provide an analysis that can be subject to
judicial review.  See Burnett v. Commissioner of Social Sec.
Admin., 220 F.3d 112, (3d Cir. 2000) (remanding case where ALJ
only provided single, conclusory statement that the plaintiff's
impairment failed to equal the level of severity of any disabling
condition contained in Appendix 1, Subpart P of Social Security
Regulations No. 4).  The holding in Burnett, however, "... does
not require the ALJ to use particular language or adhere to a
particular format in conducting his analysis."  Jones v.
Barnhart, 364 F.3d 501, 504 (3d Cir. 2004).  "Rather, the
function of Burnett is to ensure that there is sufficient

17

development of the record and explanation of findings to permit meaningful review." Id.

Here, unlike in Burnett, the ALJ identified what he considered the relevant Listing for plaintiff's mental impairment. When evaluating Listing 12.06, "the required level of severity for these disorders is met when the requirements of both A and B are satisfied, or when the requirement in both A and C are satisfied." See 20 C.F.R. Part 404, Subpart P, Appendix 1, §12.06.[1]

---

[1] Paragraph 12.06 A, B, and C, state:
"A. Medically documented findings of at least one of the following:
   1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:
   a. Motor tension; or
   b. Autonomic hyperactivity; or
   c. Apprehensive expectation; or
   d. Vigilance and scanning; or
   2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation, or
   3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror, and sense of impending doom occurring on the average of at least once a week; or
   4. Recurrent obsessions or compulsions which are a source of marked distress; or
   5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;
     AND
B. Resulting in at least two of the following:
   1. Marked restriction of activities of daily living; or
   2. Marked difficulties in maintaining social functioning; or
   3. Marked difficulties in maintaining concentration, persistence, or pace; or
   4. Repeated episodes of decompensation each of extended duration
     OR
C. Resulting in complete inability to function independently

18

The ALJ made the following findings with regard to whether the paragraph "B" criteria were satisfied:[2] (1) in activities of daily living, the plaintiff has mild restriction; (2) in social functioning, the plaintiff has mild difficulties; (3) with regard to concentration, persistence or pace, the plaintiff has mild difficulties; and (4) as for episodes of decompensation, the plaintiff had experienced no episodes of decompensation.  The ALJ found no "marked" restrictions or difficulties in such activities.[3]  The ALJ stated that "[a] marked limitation means more than moderate but less than extreme" and found that plaintiff's "... mental impairment did not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation... ."  The ALJ concluded that the "paragraph B" criteria were not satisfied.  The ALJ also stated that the evidence did not "...establish the presence of the 'paragraph C' criteria."

Although the ALJ identified the relevant Listing and stated his findings under paragraphs B and C, the ALJ did not support the findings with adequate references to the record. Although he does extensively cite to plaintiff's medical history, there is no discussion regarding plaintiff's daily activities, his social activities or his ability to function independently.

outside the area of one's home." 20 C.F.R. Pt. 404, Subpt. P., Appx. 1, 12.06, A-C.

[2]    We assume that the ALJ found Paragraph A criteria satisfied.

[3]    See footnote 1, _supra_.

19

Cf. Barnhart, 364 F.3d at 505 (finding that ALJ's decision
supported because it discussed the evidence pertaining to lack of
pulmonary complications, a finding that claimant's lungs were
clear, and claimant's medical history which showed no frequent
hospitalization or emergency treatments).  Without some reference
to the record as to why the ALJ concluded that plaintiff did not
meet the criteria in paragraphs B and C, this Court cannot
conduct a meaningful review.  Accordingly, on remand, the ALJ
should elaborate on, with specific reference to the record, why
he characterized plaintiff's restrictions on activities of daily
living, social functioning, and concentration, persistence or
pace as mild despite plaintiff's testimony to the contrary.

**4.   Cervical Disc Disease**

Plaintiff argues that the ALJ committed error in not
addressing whether plaintiff's cervical disc disease constituted
a severe impairment.  We agree but conclude this error was
harmless.  At step two, the ALJ has to "consider the medical
severity of a claimant's impairment(s)."  20 C.F.R.
§404.1520(a)(4)(ii).  "The severity test at step two is a 'de
minimis screening device to dispose of groundless claims.'"
McClease, 2009 WL 3497775, *4 (quoting McCrea v. Comm'r of Soc.
Sec., 370 F.3d 357, 360-361 (3d Cir. 2004)) (quoting Newell v.
Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003)).  The
severe impairment "... must have lasted or must be expected to

last for a continuous period of at least twelve months."  20
C.F.R. §404.1509.  In order to have a severe impairment(s), the
impairment or combination thereof must significantly limit a
person's "physical or mental ability to do basic work
activities."  20 C.F.R. §404.1520(c).

Even if an ALJ erroneously decides at step two that a
certain impairment was not severe, but finds another is, such
error may be harmless. See Salles v. Commissioner of Social Sec.,
229 Fed.Appx. 140, 145 n. 2 (3d Cir. 2007) (stating that
"[b]ecause the ALJ found in Salles's favor at Step Two, even if
he had erroneously concluded that some of her other impairments
were non-severe, any error was harmless.") (citing Rutherford v.
Barnhart, 399 F.3d 546, 553 (3d Cir. 2005)); Rivera v.
Commissioner of Social Sec., 164 Fed.Appx. 260, 262 n. 2 (3d Cir.
2006) (stating that "Rivera also argues that the ALJ committed
errors in the second step, but the ALJ found in her favor at that
step (holding that she did have a severe impairment), so any such
errors were harmless."); McClease v. Commissioner of Social
Security, No. 08-1673, 2009 WL 3497775, at * 10 (E.D.Pa. Oct. 28,
2009) ("[E]ven if an ALJ erroneously determines at step two that
one impairment is not "severe," the ALJ's ultimate decision may
still be based on substantial evidence if the ALJ considered the
effects of that impairment at steps three through five.");
Holcomb v. Astrue, No. 07-863, 2008 WL 3539987, at *5 (W.D.Pa.

Aug. 13, 2008) ("Where a claim proceeds past the second step because of the existence of other impairments, however, an erroneous determination as to a particular impairment may be inconsequential.").

Here, although the ALJ did cite to the medical record indicating that plaintiff had cervical sprain and strain and disc bulging, he did not provide any discussion on whether plaintiff's cervical condition constituted a severe impairment.  However, even if plaintiff's cervical condition could be considered a severe impairment, the omission by the ALJ is harmless error since he found that plaintiff's right eye blindness, PTSS, and internal derangement of knees to be severe impairments prompting his analysis to continue, and since the ALJ discussed plaintiff's cervical condition in determining his RFC.  See id.  Ultimately, the ALJ found that plaintiff could perform sedentary work as defined in 20 C.F.R. 404.1567(a).  Sedentary work is described as:

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

See 20 C.F.R. 404.1567(a).  Sedentary work is the least physical of the classification of jobs which includes sedentary, light, medium, heavy, and very heavy.  See id.  Thus, even if

22

plaintiff's medical condition was included among his severe impairments, the ALJ had included medical information regarding plaintiff's cervical condition in his RFC analysis and had assigned the lowest job classification.  There is no evidence to suggest that classifying his cervical condition as a severe impairment would have resulted in a different RFC or job classification.

**5.  Past Relevant Work**

Plaintiff argues that the ALJ was incorrect in finding that plaintiff could perform his past relevant work because the job description for an "inspector, general (any industry)" DOT No. 609-684-010 requires frequent reaching and frequent depth perception, which activities plaintiff is unable to do.  Since we found the analysis incomplete as to plaintiff's credibility regarding his limitations, and as to plaintiff's activities and ability to function independently with regard to his mental impairment Listing, it is unclear whether the ALJ's express consideration of these issues would alter the past relevant work analysis and, therefore, the matter must be remanded.

The relevant provision of the Social Security Act requires that an applicant for disability benefits demonstrate that "his physical or mental impairment or impairments are of such severity that he is ... unable to do his previous work...." 42 U.S.C. § 423(d)(2)(A).  See Martin v. Sullivan, 901 F.2d 650,

653 (8ᵗʰ Cir. 1990)(rejecting argument that plaintiff could not return to his past relevant work as a stockroom attendant because his past job required light exertion while he is now capable only of sedentary work); Jock v. Harris, 651 F.2d 133, 135 (C.A.N.Y. 1981)(finding it proper for the ALJ to notice that the occupation of "cashier" encompassed sedentary jobs as well as jobs that may require extended periods of standing or occasional supplemental work requiring greater amounts of exertion).

Therefore, even if plaintiff is unable to do the *type* of work he performed as an inspector according to the DOT description, he would also have to prove that he is unable to perform his previous work as he actually performed it.  Although the type of work performed by an inspector general is considered "light," based on the record and the plaintiff's testimony, the ALJ found that the plaintiff's past work as an inspector was sedentary as he performed it.  The ALJ noted that plaintiff stopped working because he was terminated, not because he was unable to do the work and that after he was terminated he continued to look for work.

Nevertheless, we have found the analysis incomplete as to plaintiff's credibility regarding his limitations, as to plaintiff's daily and social activities, and his ability to function independently with regard to his mental impairment Listing.  It is therefore not clear whether the ALJ's express

24

consideration of these issues would alter his past relevant work analysis.  For instance, if the ALJ found that plaintiff was indeed limited in certain activities, it may alter his analysis that plaintiff could perform his job as an inspector, as he performed it, as a sedentary job, with the exception that he could not perform work that required binocular vision or depth perception.  Alternatively, after explaining his analysis, the ALJ's determinations that plaintiff's testimony was not credible, and that plaintiff did not meet Listing 12.06 could remain the same, so that his conclusion that plaintiff could perform his past relevant work, as he performed it - sedentary with the visual exceptions - remains unchanged.  On remand, the ALJ should expressly address this issue.

Accordingly, the decision of the ALJ will be reversed and the matter shall be remanded for proceedings consistent with this Opinion.

An Order shall be entered consistent with this Opinion.


      S/Noel L. Hillman
      NOEL L. HILLMAN, U.S.D.J.

Dated:   September 26, 2011

At Camden, New Jersey